IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

Nos. 23-2785

TED VELLEFF,

                                                   *Plaintiff-Appellant*,

   -vs-

SHERIFF OF COOK COUNTY AND COOK COUNTY, ILLINOIS

                                                   *Defendants-Appellees.*

————————————————

Appeal from the United States District Court
for the Northern District of Illinois
No. 17-cv-8120 — Steven C. Seeger, District Judge.

————————————————

# REPLY BRIEF OF PLAINTIFF-APPELLANT

Kenneth N. Flaxman
*Counsel of Record*
Joel A. Flaxman
200 South Michigan Avenue
Suite 201
Chicago, Illinois 60604
(312) 427-3200
*Attorneys for Plaintiff-Appellant*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Plaintiff Has Standing ................................................................................ | 1 |
| II. | The Sheriff Continues to be Unable to Articulate a Rational Basis for Its Arbitrary Policy .................................................... | 3 |
| | A. This case is not controlled by the cases involving the burden of storing arrestee property ................................................. | 2 |
| | B. Plaintiff had a constitutionally protected property interest in his government-issued identification card ................... | 4 |
| III. | Plaintiff's Conditional Argument on Class Certification ......................... | 6 |
| | A. A large number of prisoners who leave the Jail for IDOC entered the Jail with government-issued identification ................ | 6 |
| | B. The ordinary rules for party presentation apply to a motion to certify a class .................................................................... | 8 |
| IV. | Conclusion ............................................................................................... | 11 |

# TABLE OF AUTHORITIES

*Armour v. City of Indianapolis*, 566 U.S. 673 (2012) ................................ 5-6

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008) ................................ 6

*Campos v. Cook County*, 932 F.3d 972 (7th Cir. 2019) ................................ 5

*Carter v. Sheriff*, N.D. Ill. 22-cv-1893, appeal pending
    7th Cir., No. 24-1035 ................................ 10

*Conyers v. Chicago*, 10 F.4th 704 (7th Cir. 2021) ................................ 3-4, 6

*Davis v. Hutchins*, 321 F.3d 641 (7th Cir. 2003) ................................ 8-9

*Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146
    (7th Cir. 2022) ................................ 2

*Kelly-Lomax v. Chicago*, 49 F.4th 1124 (7th Cir. 2022) ................................ 3-4, 6

*Mulvania v. Sheriff of Rock Island*, 850 F.3d 849
    (7th Cir. 2017) ................................ 7

*People v. Heineman*, 2023 IL 127854, 216 N.E. 3d 205
    (2023) ................................ 5

*Roundy's Inc., v. N.L.R.B.*, 674 F.3d 638 (7th Cir. 2012) ................................ 7

*Tyler v. Hennepin County*, 598 U.S. 631 (2023) ................................ 4

*United States v. Cox*, 54 F.4th 502 (7th Cir. 2022) ................................ 7

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976) ................................ 5

*Wilson v. City of Evanston*, No. 21-2888, 2023 WL 3016266
    (7th Cir. April 20, 2023) ................................ 3-4, 6

Federal Rule of Civil Procedure 23(a)(1) ................................ 6, 8, 9

20 ILL. ADMIN CODE § 535.140 ................................ 5
20 ILL. ADMIN CODE § 701.60(d)(4) ................................ 5

## I. Plaintiff Has Standing

The Court should reject the Sheriff's argument that plaintiff lacks standing to prosecute this appeal. (Brief of Appellee 6.)

Plaintiff demonstrated in the district court that he entered the Jail in 2016 with his Illinois identification card. (Brief of Appellant 4.) The Sheriff, pursuant to his policy, did not send plaintiff's government-issued identification to the Illinois Department of Corrections when plaintiff left the Jail for the penitentiary. (*Id.*) During proceedings in the district court, the Sheriff located some of plaintiff's property but did not find the state identification card that plaintiff had when he entered the Jail in 2016. (Brief of Appellant 5.) The Sheriff presented a document showing that plaintiff's property had become "eligible for destruction" on January 25, 2018. (*Id.*)

Plaintiff challenges the Sheriff's policy of retaining government-issued identification when it transfers prisoners to the Illinois Department of Corrections. The district court, in its order denying plaintiff's motion to reconsider the denial of class certification (Short Appendix 56-71), recognized that the case involves property taken from plaintiff Velleff when he entered the Jail in 2016. (Short Appendix 60.) The district court also acknowledged that the Sheriff has not returned the property it seized from plaintiff in 2016. (*Id.*)

Defendant begins its summary of argument by stating, "Velleff lacks standing to bring this appeal challenging the Sheriff's policy of destroying the abandoned government-issued identification cards of detainees because he did not establish that his government-issued identification card was destroyed." (Brief of Appellee 6.) Defendant then discusses standing to seek injunctive relief. (Brief of Appellee 8-11.) This argument is frivolous because plaintiff does not seek injunctive relief.

Nowhere in plaintiff's opening brief is there any request for injunctive relief. The district court rejected all claims for injunctive relief. (Short Appendix 13, 14, 32, 33, and 57). Plaintiff does not challenge these rulings on appeal and the only relief he seeks is monetary damages.

Defendant concludes its argument about injunctive relief with the concession that plaintiff has standing to seek damages ("retrospective relief"). (Brief of Appellee 11.) The Court should accept this concession: Plaintiff has Article III standing because the Sheriff's policy resulted in the loss of plaintiff's government-issued identification and this injury is redressable through monetary damages. *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146, 1150-51 (7th Cir. 2022) (collecting and discussing cases).

## II. The Sheriff Continues to be Unable to Articulate a Rational Basis for Its Arbitrary Policy

### A. This case is not controlled by the cases involving the burden of storing arrestee property

The Sheriff mistakenly relies on three recent decisions from this Court: *Conyers v. City of Chicago*, 10 F.4th 704 (7th Cir. 2021); *Kelley-Lomax v. City of Chicago*, 49 F. 4th 1124 (7th Cir. 2022), and *Wilson v. City of Evanston*, No. 21-2888, 2023 WL 3016266 (7th Cir. April 20, 2023). (Brief of Appellee 12.) None of these cases decided the issue presented in this case.

*Conyers*, *Kelley-Lomax*, and *Wilson* each arose from a policy of the Cook County Jail to refuse to accept most personal property when an arrestee enters the Jail. One exception to that policy was that the Sheriff allowed "arrestees to keep… government-issued identification cards." *Conyers*, 10 F.4th at 706. As a result of that policy, the municipalities (Chicago in *Conyers* and *Kelley-Lomax*; Evanston in *Wilson*) adopted policies to dispose of the property of arrestees who were transferred to the Cook County Jail. In those cases, the Court rejected challenges to the municipal policies to deem abandoned any arrestee property that the arrestee (or an agent) did not retrieve within a brief period after arrest. *E.g.*, *Kelley-Lomax*, 49 F.4th at 1125.

The Sheriff does not dispute that the policy at issue here is different because the Illinois Department of Corrections is ready, willing, and able to

accept government-issued identification cards when a prisoner leaves the Jail for the penitentiary. In *Conyers*, *Kelley-Lomax*, and *Wilson*, the municipalities had to adopt policies for property that could not be transferred with the prisoner. Thus, this is not a case involving an attempt to "compel[] the [Sheriff] to hold property forever." *Conyers*, 10 F.4th at 711.

The Sheriff in this case does not assert that it has an interest in "reducing the burden of storing the property." *Wilson*, 2023 WL 3016266 at *3. Nor does the Sheriff rely on an "unwillingness to serve as unpaid bailee for indefinite periods." *Kelley-Lomax*, 49 F. 4th at 1125. Accordingly, *Conyers*, *Kelley-Lomax*, and *Wilson* are not controlling.

### B. Plaintiff had a constitutionally protected property interest in his government-issued identification card

The Sheriff correctly states that "[a] threshold prerequisite for a substantive due process claim of the type Velleff asserts is an underlying constitutionally protected property interest." (Brief of Appellee 12.) The Sheriff, however, does not attempt to explain why a prisoner's right to possess government-issued identification cards is not a constitutionally protected property right.

"State law is an important source" of property rights. *Tyler v. Hennepin County*, 598 U.S. 631, 638 (2023). Illinois requires its Department of Corrections to store a prisoner's government-issued identification while the

prisoner remains in the penitentiary. The Illinois Administrative Code, which has "the force and effect of law," *People v. Heineman*, 2023 IL 127854, 216 N.E. 3d 205, 220 (2023), requires the IDOC to retain that property until a prisoner "has separated from the Department by death, discharge, or unauthorized absence" and the property is not claimed for one year. 20 ILL. ADMIN CODE § 535.140. Under the Administrative Code, transferring government-issued identification with a prisoner is mandatory; 20 ILL. ADMIN CODE § 701.60(d)(4) requires that, "Personal property allowed by the receiving facility shall be transferred with the detainee." And, as plaintiff explained in his opening brief at 5-6, government-issued identification cards are among the property allowed by the IDOC.

The government may not deprive a person of property by acting "in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976); *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019). "Arbitrary and irrational" is a fair description of the Sheriff's policy of refusing to send government-issued identification cards to the IDOC, where state law requires sending the cards and the IDOC is ready, willing, and able to accept the cards. The Court should reject the Sheriff's argument that plaintiff is unable "'to negative every conceivable basis'" for the policy. (Brief of Appellee at 13, citing *Armour v. City of Indianapolis*, 566 U.S. 673,

685 (2012).) Plaintiff showed above why there was a basis for the property policies in *Conyers*, *Kelley-Lomax*, and *Wilson*. None of those justifications apply here, and the Sheriff fails to point to any conceivable basis for its policy.

### III. Plaintiff's Conditional Argument on Class Certification
#### A. A large number of prisoners who leave the Jail for IDOC entered the Jail with government-issued identification

The Sheriff did not disagree in the district court with plaintiff's contention that "more than 35,000 persons had been sent from the Cook County Jail to IDOC after November 8, 2015." (Brief of Appellant 8.) Nor does the Sheriff dispute this number in this Court.

Plaintiff supported his showing of numerosity in the district court with evidence that a sampling of 42 persons who left the Jail for IDOC between 2013 and 2016 showed that 39 had entered the Jail with government-issued identification. (Brief of Appellant 8.) This sampling, while not providing "detailed and specific information … about the potential number and identities of possible class members," *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008) (rejecting argument), shows that the number of persons who entered the Jail with government-issued identification during the proposed class period satisfies the numerosity requirement of Rule 23(a).[1]

---

[1] The sampling showed that about 97% of those who left the Jail for IDOC had entered the Jail with government-issued identification that was not sent to IDOC. If, as this Court

-6-

The Sheriff challenges plaintiff's sampling because most of the persons in the sample left the Jail before November 9, 2015 (the proposed starting date of the class). (Brief of Appellee 18.) The Sheriff asserts that the evidence is therefore "irrelevant in this case because the proposed class begins in 2015." The Sheriff failed to explain his relevancy argument in the district court and fails to do so here. (*Id.*)

This Court has repeatedly refused to consider conclusory and undeveloped arguments, especially when presented in a single sentence. *Roundy's Inc., v. N.L.R.B.*, 674 F.3d 638, 650 n.3 (7th Cir. 2012); *United States v. Cox*, 54 F.4th 502, 517 n.3 (7th Cir. 2022). This rule is appropriate here.

Evidence that 97% of the persons who entered the Cook County Jail before November 9, 2015 arrived with government-issued identification is relevant to show that persons continued to carry government-issued identification. Carrying government-issued identification did not become unlawful, unhealthy, or impracticable. "Past behavior is the best predictor of future behavior." *United States v. Christy*, 916 F.3d 814, 862 (10th Cir. 2019) (cleaned up). It was reasonable for the district court to accept plaintiff's

---

held in *Mulvania v. Sheriff of Rock Island*, 850 F.3d 849 (7th Cir. 2017) a class of 40 can establish numerosity, the same is true for the putative class in this case of more than 30,000 persons (97% of 35,000 is 33,950).

evidence as establishing that "lots of people get arrested with ID cards, wind up at the Cook County Jail, and then get shipped to IDOC." (Short Appendix 48.)

### B. The ordinary rules of party presentation apply to a motion to certify a class

The Sheriff does not attempt to support the district court's *sua sponte* finding that there is no evidence "that the Jail does not send ID cards to the IDOC at all."[2] (Short Appendix 52.) The Sheriff advanced numerous arguments in the district court in opposition to class certification, but it did not argue that the challenged policy does not exist.

In response to plaintiff's argument about party presentation (Brief of Appellant 24), the Sheriff asks the Court to read into Rule 23(a) a requirement that, before ruling on class certification, a district court must conduct an independent *ex parte* factual investigation. (Brief of Appellee 17.) This departure from the ordinary rules of party presentation is not supported by *Davis v. Hutchins*, 321 F.3d 641 (7th Cir. 2003), the sole case cited by appellee for this remarkable proposition.

---

[2] The Sheriff suggests that the members of the putative class could have "donated" their government-issued identification. (Brief of Appellee 17.) Donation of personal property like clothing or jewelry might be sensible, but plaintiff cannot fathom any legitimate use for identification issued to another.

-8-

In *Davis*, the district court granted a default judgment and awarded monetary damages to the plaintiff and to the putative class. 321 F.3d at 645. This Court upheld the award to the plaintiff but reversed the award of damages to the putative class because "[c]lass damages cannot be awarded if no class is certified." *Id.* at 648. The Court concluded that "[a]llowing certification by default or because the defendant has admitted that the class exists, with no independent analysis or determination by the district judge, would remove this important protection [of Rule 23]." *Id.*

The Sheriff seeks to extract from *Davis* the rule that a district judge must conduct an independent investigation to determine whether a proposed class satisfies each requirement of Rule 23(a). (Brief of Appellee at 16-17.) *Davis* neither considered nor endorsed this proposed rule.

The Sheriff's rule condones the district court's unmoored speculation that the Sheriff might well have sent ID cards to the IDOC without telling the prisoners. (Short Appendix 48.) The Sheriff, of course, knows that this is untrue: The Sheriff follows a uniform policy of destroying government-issued identification cards that are not promptly retrieved after a prisoner leaves the Jail for IDOC. (Brief of Appellee 6.) The district court should not have violated the rules of party presentation and relied on its independent and erroneous view of the facts.

### C. Plaintiff will adequately represent a class

Defendant argues that plaintiff's counsel could not adequately represent a class in this case because counsel also represents the plaintiffs in *Carter v. Sheriff*, N.D. Ill. 22-cv-1893, appeal pending 7th Cir., No. 24-1035. (Brief of Appellee 18-19.) This argument is without merit.

Defendant envisions a conflict "between any settlement with the individual plaintiffs in *Carter* and a class in *Velleff*." (Brief of Appellee 19.) There have not been any settlement discussions in *Carter*, which is pending in this Court on appeal from the district court's grant of a Rule 12(b)(6) motion to dismiss. Nor is there yet a class in *Velleff*.

In addition to being hypothetical, the claimed conflict is illusory: If a class is certified in *Velleff*, and if this Court reverses and remands *Carter*, counsel would seek to consolidate the two cases and join the *Carter* plaintiffs as additional named plaintiffs. In fact, plaintiffs in this case and in *Carter* asked the Court to consolidate the cases for appeal, and defendant opposed the request. Defendants-Appellees' Response in Opposition to Plaintiffs' Motion to Consolidate filed as ECF No. 8 in *Carter v. Sheriff*, 24-1025 (January 22, 2024.)

## IV. Conclusion

For the reasons above stated and those previously advanced, the Court should reverse the order of the district court granting summary

judgment to defendant and remand for reassignment to a different district judge with instructions to consider the requirements for class certification other than numerosity.

Respectfully submitted,

/s/ Kenneth N. Flaxman
Kenneth N. Flaxman
*Counsel of Record*
Joel A. Flaxman
200 S Michigan Ave, Ste 201
Chicago, IL 60604
(312) 427-3200

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

The undersigned, attorney for Plaintiff-Appellant, certifies that the foregoing reply brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a). The brief contains 2,259 words, as measured by the word-counting application of Microsoft Word 365.

/s/ <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
*an attorney for plaintiff-appellant*